| Estado Libre Asociado de Puerto Rico TRIBUNAL DE APELACIONES PANEL VIII | | |
|---|---|---|
| MITCHELL ANDÚJAR RIVERA Peticionario v. DEPARTAMENTO DE TRANSPORTACIÓN Y OBRAS PÚBLICA Recurrida | TA2025CE00681 | *CERTIORARI* Procedente del Tribunal de Primera Instancia, Sala de Caguas Caso Núm.: CG2025MU00133 |

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard.

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 8 de diciembre de 2025.

Comparece ante nos, por derecho propio, el señor Mitchell Andújar Rivera ("señor Andújar" o "Peticionario") mediante documento intitulado *Recurso de Revisión Judicial*, recibido el 27 de octubre de 2025, el cual fue se clasificó como *Certiorari* y se le asignó la denominación alfanumérica TA2025CE00681. Nos solicita la revocación de la *Resolución* emitida el 6 de octubre de 2025, notificada el 14 de octubre del mismo año por el Tribunal de Primera Instancia, Sala Municipal de Caguas ("foro primario" o "foro a quo"). Por virtud del mencionado dictamen, el foro *a quo* declaró *No Ha Lugar* un recurso de revisión administrativa de multa de tránsito presentada por el Peticionario.

Por los fundamentos que expondremos a continuación, **expedimos** el recurso de *certiorari* y **confirmamos** el dictamen recurrido.

### I.

Conforme se desprende de los autos, el 19 de septiembre de 2025, el señor Andújar presentó *Recurso de Revisión de Multa*

*Administrativa de Tránsito.*[1] En esta, el Peticionario arguyó que recibió una multa administrativa de tránsito por violación al Artículo 5.02 (G) de la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22-2000, según enmendad, 9 LPRA sec. 5122 la cual penaliza a los conductores que manejen a exceso de velocidad. Del recurso presentado se desprende que la intervención fue realizada por el sargento Quiñones. En concreto, el señor Andújar expuso lo siguiente: "cuando el oficial me detuvo, le pregunté cómo había computado mi velocidad ya que al observar por el retrovisor noté que su patrulla no estaba equipada con radar para medir velocidad".[2] Adujo que, ante esto, el sargento Quiñones le respondió que midió la velocidad con una cámara. El Peticionario indicó que le preguntó al sargento Quiñones si dicha cámara era un equipo válido para determinar la velocidad, a lo cual el agente respondió en la afirmativa.

El señor Andújar esgrimió que, acto seguido, le solicitó al sargento Quiñones que le mostrara la lectura del equipo utilizado. Agregó que el sargento Quiñones "se negó a mostrar evidencia alguna manifestando que presentaría la cámara únicamente en el tribunal".[3] Ante este cuadro, el Peticionario argumentó que "una cámara de patrulla ni es un equipo reconocido ni certificado para medir velocidad, salvo que esté integrada a un sistema aprobado oficialmente".[4] Por ello, el señor Andújar solicitó la desestimación del boleto emitido en su contra ya que el agente lo "detuvo y asignó una velocidad "a ojo", sin evidencia técnica ni legamente admisible".[5]

Evaluado el recurso del Peticionario, el 6 de octubre de 2025, notificada el 14 de octubre del mismo año el foro primario emitió

---

[1] Véase SUMAC TPI, Entrada 1.
[2] Véase SUMAC TPI, Entrada 1, pág. 2.
[3] *Íd.*
[4] *Íd.*
[5] *Íd.*

*Resolución Sobre Recurso de Revisión de Multa Administrativa de Tránsito.*[6] Por virtud de este dictamen, el foro primario destacó que a la vista realizada comparecieron tanto el Peticionario como el "agente de la Policía de Puerto Rico". Concluyó el foro primario que tras escuchar las partes y examinar la prueba que tenía ante su consideración, declaró *No Ha Lugar* el recurso instado por el Peticionario.

Insatisfecho, el 14 de octubre de 2025, señor Andújar presentó *Reconsideración.*[7] Al amparo de este escrito, reiteró su postura en cuanto a que no se utilizó un equipo oficial para medir la velocidad de su vehículo de motor, por lo que el sargento Quiñones no tenía motivos fundados para la intervención. Evaluado este escrito, el 17 de octubre de 2025, notificado el 20 de octubre del mismo año, el foro primario declaró *No Ha Lugar* la solicitud de reconsideración instada por el Peticionario.[8]

Aun inconforme, el 27 de octubre de 2025, el señor Andújar presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia al convalidar una multa sustentada en un método no autorizado ni calibrado para medir velocidad.
>
> Erró el Tribunal al no requerir la presentación de la evidencia electrónica conforme al Art. 5.05 de la Ley 22.
>
> Erró el Tribunal al omitir fundamentar su determinación, en violación al debido proceso de ley.
>
> Erró el Tribunal al no considerar el Reglamento Núm. 7348, que prohíbe el uso de cámaras de patrulla como instrumentos de medición.
>
> Erró el Tribunal al evaluar la falta de motivo fundado para la intervención, viciando la legalidad del proceso administrativo.
>
> Erró el Tribunal al no atender la solicitud de prueba pericial o testifical del Director del Negociado de Patrullas de Carreteras

---

[6] Véase SUMAC TPI, Entrada 5.
[7] Véase SUMAC TPI, Entrada 6.
[8] Véase SUMAC TPI, Entrada 7.

Erró el Tribunal al no tomar en consideración las omisiones en el boleto administrativo y las inconsistencias en el testimonio del sargento.

El 29 de octubre de 2025, esta Curia emitió *Resolución* en la cual se le concedió a la parte Recurrida hasta el 6 de noviembre de 2025, para que mostrara causa por la cual no se debía expedir el auto de *certiorari* y revocar la determinación judicial impugnada. Oportunamente, el 6 de noviembre de 2025, la Oficina del Procurador General de Puerto Rico en representación del Departamento de Transportación y Obras Públicas compareció mediante *Escrito en Cumplimiento de Resolución y Solicitud de Desestimación*.

Por otro lado, el 14 de noviembre de 2025, notificada el 17 de noviembre del mismo año, esta Curia emitió *Resolución* en la cual le concedimos al Peticionario un término de diez (10) días para que tramitara ante el foro primario la regrabación de los procedimientos. Del mismo modo, se le apercibió al señor Andújar que, de no cumplir con lo ordenado, se procedería resolver sin el beneficio de la prueba oral y se consideraría renunciado todo señalamiento de error cuya evaluación dependa de la misma. Así pues, el 18 de noviembre de 2025, el Peticionario presentó *Moción Informando Cumplimiento Parcial con la Resolución de 14 de noviembre de 2025*. Por virtud de esta, notificó que, en dicha fecha, a saber, el 18 de noviembre de 2025, acudió al foro primario a solicitar la regrabación y que se encontraba en espera de que esta le fuese entregada para así someterla a esta Curia.

Así las cosas, el 2 de diciembre de 2025, la Coordinadora de Sistema de Grabación de la Región Judicial de Caguas presentó Moción en Cumplimiento de la Solicitud de Regrabación en la que informó que la copia de la regrabación se le entregó al señor Andújar por correo electrónico. Oportunamente, el 3 de diciembre

de 2025, el Peticionario sometió la regrabación de los procedimientos ante esta Curia.

Con el beneficio de la comparecencia de las partes, y la regrabación de la vista, procedemos a resolver.

## II.
### A. *Certiorari*

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, establece que el recurso de *certiorari* solo se expedirá cuando se recurra de (1) una resolución u orden sobre remedios provisionales o *injunction* o (2) la denegatoria de una moción de carácter dispositivo. Por excepción, se puede recurrir también de: (1) decisiones sobre la admisibilidad de testigos o peritos; (2) asuntos de privilegios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia, o (5) en casos que revistan interés público. *Íd.* De igual manera, puede revisarse "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Íd.* Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni en ausencia de parámetros. *BPPR*

*v. SLG Gómez-López,* 213 DPR 314, 337 (2023).  La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, 215 DPR __ (2025), señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari. Íd.* Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

### B. Estándar de Revisión de Apreciación de Prueba

En nuestro ordenamiento jurídico, la "tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada". *Gómez Márquez et al. v. El Oriental,* 203 DPR 783, 792 (2020).  Esto "incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz". *Íd,* citando a *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013). Los tribunales apelativos "no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos". *Dávila Nieves v. Meléndez Marín, supra,* pág. 770.

Por ello, los tribunales apelativos no intervenimos con la apreciación de la prueba, la adjudicación de credibilidad y las

determinaciones de hechos que realiza ese foro *Sucn. Rosado v. Acevedo Marrero,* 196 DPR 844, 917 (2016).  Sin embargo, esa deferencia descansa en un marco de discreción y razonabilidad. *Citibank NA v. Cordero Badillo,* 200 DPR 724, 735 (2018).  La discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2016).  Así que, ese juicio discrecional "no es en función al antojo o voluntad de uno, sin tasa ni limitación alguna".  *Santa Aponte v. Srio. Hacienda,* 105 DPR 750, 770 (1977). Los tribunales revisores podremos sustituir el criterio que utilizó el foro primario por el nuestro únicamente cuando existen circunstancias extraordinarias en las que se pruebe que el foro primario actuó con pasión, prejuicio o parcialidad, incurrió en craso abuso de discreción o en un error manifiesto o de derecho. *Citibank NA v. Cordero Badillo, supra,* pág. 736.

Se dice que el tribunal incurrió en un error manifiesto "cuando, de un análisis de la totalidad de la evidencia, el tribunal apelativo queda convencido de que se cometió un error, aunque haya evidencia que sostenga las conclusiones de hecho del tribunal". *Gómez Márquez et al. v. El Oriental,* supra*,* pág. 793*.*  Esto implica que "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble".  *Íd.*  Véase, también, *Pueblo v. Rivera Montalvo,* 205 DPR 352, 374 (2020).  Dicho estándar de revisión, "restringe nuestra facultad para sustituir el criterio del foro primario a escenarios en los que de la prueba admitida *no exista base suficiente que apoye tal determinación".  Pueblo v. Toro Martínez,* 200 DPR 834, 859 (2018).  (Énfasis en original).

Por otro lado, el juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Dávila Nieves v. Meléndez Marín, supra*, pág. 782. De otra parte, un tribunal puede incurrir en abuso de discreción cuando el juez: (1) ignora sin fundamento algún hecho material importante que no podía pasar por alto, (2) concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, (3) a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable. *Pueblo v. Sanders Cordero,* 199 DPR 827, 841 (2018).

Cónsono con lo anterior, la Regla 76 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprobó. Enmdas. Reglamento TA,* 2025 TSPR 42, 215 DPR __(2025),* dispone lo siguiente:

> Una parte que ha presentado un recurso ante el Tribunal de Apelaciones notificará al Tribunal de Apelaciones, no más tarde de diez días desde que se presentó el recurso, si se propone reproducir la prueba oral que desfiló ante el foro recurrido y si propone una transcripción, una exposición narrativa estipulada o algún otro método. La parte proponente identificará en la moción las porciones pertinentes del récord ante el Tribunal de Primera Instancia cuya transcripción interesa, incluyendo la fecha del testimonio y los nombres de los testigos.

> Si la parte ha impugnado la apreciación de la prueba por el foro recurrido, o si el Tribunal de Apelaciones considera que es necesario o conveniente examinar la prueba oral para adjudicar apropiadamente los señalamientos de error de la parte apelante, peticionaria o recurrente, el Tribunal deberá, en ausencia de una expresión al respecto de dicha parte, ordenar a esta que informe, en un término razonable, si se propone reproducir la prueba oral y qué método propone para esto. **Dicha orden deberá incluir una advertencia sobre la consecuencia de no reproducir la prueba oral de forma oportuna, lo cual podría incluir que se considere renunciado todo señalamiento de error cuya adjudicación dependa, parcial o totalmente, de una evaluación de la prueba oral**.

> A instancia de parte, o por iniciativa propia, **el tribunal determinará si autoriza la reproducción de la prueba oral, así como el método que se utilizará para esto** (Énfasis suplido).

El foro intermedio apelativo no puede cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de los mecanismos provistos para ello, la prueba que tuvo ante sí el foro primario.

### C. Infracciones a la Ley Núm. 22-2000

En nuestro ordenamiento jurídico, "[n]adie deberá guiar a una velocidad mayor a la que se permita ejercer el debido dominio del vehículo y deberá reducir la velocidad o parar, cuando sea necesario para evitar un accidente". Artículo 5.01, 9 LPRA sec. 5121. Por tanto, el Artículo 5.02 (g) de la Ley Núm. 22-2000, conocida como la *Ley de Vehículos y Tránsito de Puerto Rico* ("Ley 22-2000") dispone:

> Toda persona que maneje un vehículo de motor en exceso de la velocidad máxima permitida en la zona u horario, o bajo las condiciones pertinentes, según determinado por el Secretario, incurrirá en falta administrativa y se le sancionará de la siguiente forma:
>
> (1) Con multa básica de cien (100) dólares, más diez (10) dólares adicionales por cada milla por hora a que viniese manejando en exceso del límite máximo de velocidad permitido en dicha zona u horario, o bajo dichas circunstancias.
>
> (2) Con multa de mil (1,000) dólares cuando la velocidad a la que vaya el vehículo sea cien (100) millas por hora o más.

Ahora bien, la Ley-22-2000, *supra*, también regula lo concerniente a la expedición de multas de tránsito. En lo pertinente, el Artículo 5.05 dispone:

> En toda imputación de violación a los límites de velocidad establecidos en esta Ley, el boleto expedido deberá especificar la velocidad a que se alega conducía dicha persona, la velocidad máxima permitida dentro del distrito o en la zona en cuestión, el nombre y número de placa de miembro de la Policía o Policía Municipal que lo ha intervenido, y la disposición de esta ley que se ha violado. Dicho agente del orden público siempre indicará dónde está ubicado el rótulo más cercano que indica el límite máximo de velocidad.

> Todo miembro de la Policía o Policía Municipal que utilice un método electrónico para determinar la velocidad de un vehículo de motor tendrá la obligación de mostrarle a toda persona intervenida por una alegada infracción a este Artículo, la lectura que se arrojó usando ese método.

### III.

Previo a evaluar el recurso ante nuestra consideración, como cuestión de umbral, corresponde atender la solicitud de desestimación por falta de jurisdicción traído ante nuestra consideración por la Oficina del Procurador General de Puerto Rico en su escrito en oposición. Tras examinar los fundamentos de la misma, declaramos *No Ha Lugar* dicha solicitud.

Ahora bien, expuesto el marco jurídico, escuchada con detenimiento la regrabación de la vista y ponderados los argumentos presentados por las partes, a tono con los criterios que guían nuestra discreción, expedimos el presente recurso de *Certiorari* para atenderlo en sus méritos. En su recurso, el señor Andújar sostiene que el foro primario incidió al denegar su solicitud de revisión de multa administrativa de tránsito. En esencia, alude que, el agente del orden público que intervino con él, le expidió una multa de tránsito sin haber tenido motivos fundados para la detención, ni haber utilizado los mecanismos autorizados para medir velocidad. No le asiste la razón. Veamos.

Conforme surge de la regrabación de los procedimientos que obra en el expediente, el señor Andújar negó ante el foro primario, que este condujera a exceso de velocidad.[9] Expuso en su testimonio que cuando fue intervenido por el sargento Quiñones, la patrulla que este último conducía no contenía un radar que computara la velocidad.[10] Argumentó en corte abierta que el sargento Quiñones le explicó que midió la velocidad con una cámara. Añadió que le cuestionó al agente sobre el instrumento

---

[9] Véase la Regrabación de la vista, min. 0:56-1:09.
[10] Véase la Regrabación de la vista, min. 1:10-1:17.

electrónico utilizado para la medición y enfatizó que debía estar calibrado y certificado por le Departamento de Obras Públicas.[11]

Por su parte, el sargento Quiñones vertió para récord, que desde 1999 estaba certificado para computar la velocidad tanto con radar como con cualquier método electrónico.[12] Asimismo, atestó en la vista lo siguiente:

> En este caso, se utilizó la cámara ALPR instalada en los vehículos nuevos de la policía, para la cual está integrado a través del sistema GPS, donde la misma patrulla, eh, en la cámara, en la pantalla, establece la velocidad. **Una vez se comienza el seguimiento, porque cuando veo el vehículo a velocidad, no lo detengo inmediatamente, porque voy paralelo a él. Cuando él me pasa, me voy a la parte de atrás y continúo aproximadamente cuatro kilómetros con una velocidad sostenida y en la cual la pantalla de, de la cámara establecía una velocidad <u>constante de ochenta millas</u>.** Cuando intervengo con el caballero, él lo que me indica es que como él no vio radar, pues él siguió. Como él tiene un equipo para detectar el radar en el cristal de su vehículo y no le sonó, pues él continuó.
>
> ¿Por qué no le permití que se bajara del vehículo en ese momento? Porque estamos hablando de, de, de cuestión de seguridad en el área donde nos encontrábamos. Y yo te... yo, como agente del orden público, en el Artículo 4.14, es mi deber como agente del orden público, y cito el artículo, "que cuando un agente del orden público intervenga por una... con una persona por una razón de, de violación a, de esta ley, deberá hacerlo de forma profesional, diligente, de manera que se garantice la seguridad de las personas intervenidas y de la suya propia".Tengo el video disponible para mostrárselo al, al caballero. Tengo tanto el video de la... de la patrulla como la cámara corporal, donde se le trató al caballero con mucho respeto y [sic] indicándole el motivo de, de mi intervención, que está disponible si usted lo desea ver (énfasis nuestro).[13]

Se desprende de la regrabación, que acto seguido, el sargento Quiñones le mostró el video en cuestión al señor Andújar, el cual, según se puede apreciar en el audio, indicaba la velocidad del vehículo intervenido.[14] Vale destacar que el Peticionario **no impugnó ni objetó el video mostrado ni las pruebas que el sargento Quiñones presentó ante el foro primario**. Cónsono con lo anterior, es preciso destacar, que conforme surge de su testimonio, el sargento Quiñones **nunca se negó a mostrarle la**

---

[11] Véase la Regrabación de la vista, min. 1:17-1:30
[12] Véase la Regrabación de la vista, min. 2:55-3:12.
[13] Véase la Regrabación de la vista, min. 3:15-5:37.
[14] Véase la Regrabación de la vista, min. 5:38-7:12.

**lectura del método electrónico**, simplemente indicó que, por motivos de seguridad, y amparándose en el Art. 4.14 de la Ley Núm. 22, *supra*,[15] no podía mostrárselo al momento de la intervención, pero sí se lo mostró en el tribunal.

En armonía con lo previamente esbozado, toda la prueba presentada por parte del sargento Quiñones, incluyendo su testimonio, le mereció total credibilidad al foro primario. Por tanto, en ausencia de pasión, prejuicio, parcialidad, craso abuso de discreción o error manifiesto, no existen motivos que nos permitan intervenir con la apreciación de la prueba del foro primario. Ante este cuadro, corresponde otorgarle total deferencia a la valoración de dicha prueba que el foro *a quo* tuvo ante sí y, por consiguiente, procede confirmar el dictamen recurrido.

**IV.**

Por los fundamentos anteriormente expuestos, **expedimos** el recurso de *certiorari* y **confirmamos** el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

---

[15] El aludido artículo 4.14, 9 LPRA sec. 5114 dispone lo siguiente:

Cuando un agente del orden público intervenga con una persona por razón de una violación a las disposiciones de esta Ley, deberá hacerlo en forma profesional y diligente de manera que se garantice la seguridad de las personas intervenidas y la suya propia.